SMITH
vs.
BROYLES.

---

## Smith vs. Broyles.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. If a residuary devisee receive notes of an executor which contain usury, and give them up and take new notes, it is not a waiver of the right of the debtor to purge the usury from the transaction, nor has a residuary devisee any right in such case to go back upon the executor for the amount of the usury.
2. A successful party in any civil suit has a right to recover his costs, unless in the specified cases pointed out by the statute, though he may not recover to the extent of his claim.

The appellant, H. G. Smith, filed his petition in the Louisville Chancery Court, to foreclose a mortgage executed to him by John and Washington Broyles, on the 1st day of April, 1848, and have the mortgaged property sold to satisfy certain debts specified in

PET. EQ.

Case 49.

Case stated.

the mortgage, after allowing certain credits specified in the petition.

The defendants, in the answer, allege in substance that the only consideration of the notes executed to Smith, was the amount of the principal and interest of certain other notes which they had given to one Simeon Yewell, deceased, in his life-time; and that the plaintiff, Smith, being entitled to the said notes, or their proceeds, "as residuary devisee" of said Yewell, received the notes from James Guthrie, his administrator, &c.; and in discharge of those notes, executed the notes now sued on, and that there was no other consideration. They state that they borrowed money of Yewell in his life-time, on several occasions, at large and usurious rates of interest, and making altogether $2,700, and executed separate notes at each time of borrowing, and separate notes for the usurious interest. That payments to a considerable amount had been made to Yewell, and additional notes for usury and indulgence given at different times; and at one time a bonus of $50 was given for a loan. That upon a fair settlement, and expunging the usury, their indebtedness will be very small, if anything. They exhibit the notes taken up, two mortgages they had executed to Yewell, in his life-time, and several obligations given to Yewell for the hire of negroes. Say they are very illiterate, &c.

*Jas. Harrison*, for appellant—

1. The appellees admit that they borrowed of Yewell $2,700, giving amounts and dates making that sum. They do not state the rate of interest which they paid or agreed to pay. They admit that some of the notes were given for the hire of negroes.

It was through the solicitations of the appellees that the appellant was induced to take the notes from Mr. Guthrie, the executor of Yewell, in 1848, and they then gave new notes and the mortgage to secure their payment.

The appellant, it is admitted, is one of Yewell's devisees, and as such received the notes of the executor, giving his receipt for $3,859—being their amount on the 1st of April, 1848, including interest. The appellees never disclosed to appellant that there was any usury in the notes; and they were received by appellant as cash, and, after a delay of more than five years, claim to be relieved from alleged usury after they had been relieved from their indebtedness to Yewell's estate, and become the debtors of the appellant.

2. It was the duty of the appellees to inform the appellant of any equity they had against the notes before he became the purchaser of them. Had they done so, he would not have taken the notes. They failed to disclose it until more than five years have elapsed, and their remedy against the executor has been lost. They might have sued the executor after taking up the notes, but have failed to do so. The case is analagous to the cases reported : (9 *Dana*, 653; *Ib*. 601 ; 7 *J. J. Marshall*, 16 and 28 ; 1 *Litt*. 50 ; 4 *Bibb*, 39.)

3. The commissioner's report is not sustained by the proof in the cause. The testimony did not authorize the allowance of the $50 alleged to have been charged as a bonus.

4. The chancellor failed to give to appellant his costs which he was entitled to recover. (*Rev. Stat. chap*. 25, *sec*. 14, *page* 206.)

A reversal is asked.

*G. A. & I. Caldwell*, for appellees—

1. The transaction between the executor of Yewell and the appellant and appellees did not purge the usury from the original dealings with Yewell, nor preclude the appellees from afterwards asserting it. It was subject to the right of the Broyles to have the usury purged whilst in the hands of the executor. It was subject in the same way in the hands of his assignees.

The commissioner did not err in his estimate of the amount of usury, and his application of the payments to the original sums loaned, and the legal interest due at the time of the respective payments was right. (*Booker, &c. vs. Gregory*, 7 B. *Monroe*, 442.)

3. The appellees did not forfeit their right to set up the defense of usury to these notes, by anything that took place between them and the appellant. It is admitted that in the case of *Goodloe vs. Ross*, 9 *Dana*, 553, it was held by this court that a party who is induced by a promise of usury to part with a good claim, or pay money for a note in which there is usury, and who loses his recourse upon the assignor of the note, by taking a new note and surrendering the assigned note, will be protected against the plea of usury. We do not question the propriety of this decision, but deny its application to this case. Smith was not a purchaser for valuable consideration. He did not pay money or property, or surrender a good demand, in exchange for the notes on Broyles. He received the demands from the personal representative of Yewell, as "residuary devisee." This is distinctly charged in the answer of Broyles, and not denied in the reply of Smith, and must be taken as true. His estate is not diminished by the plea of usury against the demands in his own hands, any more than it would have been in the hands of the administrator or executor. If Guthrie, the personal representative, had sued, he could only have recovered the balance after purging the usury, and that balance have paid over to Smith, to whom it belonged as residuary devisee. Smith does not show that by taking the notes on Broyles, his interest in the remainder of the estate is lessened, or the interest of any other devisee. The question then is, can the devisee of the usurer, who wears his mantle, who stands in his place, avoid the assertion of usury by a debtor by any act that would not be effectual for the testator? We suppose not.

This Court has treated all subsequent agreements by a debtor to pay usury as but additional promises to do that which the law does not bind him to do, and as void. The law regards the debtor, in executing such subsequent promise, or even a release or new note, as acting under the influence and coercion of the creditor, and yielding to his demands under the pressure of his condition, and all such writings must be regarded and treated as mere shifts and devices to defeat the debtor in asserting his lawful right. (13 *B. Monroe*, 388–9.) The appellant has in this case furnished the evidence that the appellees "yielded under the pressure of their condition." That the executor was about to coerce the debts, and so informed them, and they knowing the appellant was devisee, and had power to indulge them, applied to him for indulgence, as the administrator had refused it. They did apply to Smith, and he well knew their situation. The promises made under such circumstances, to one having them in their power, to pay usury, cannot be enforced without doing violence to the spirit of the statute against usury, and the decisions of the courts bearing on that subject. The Broyles' are under no legal or moral obligation to pay Smith what they were not bound to pay Yewell.

4. The $50 paid by appellees as a bonus, is clearly proved, and was rightfully allowed by the commissioner. Nicholas Stonestreet, and other witnesses, prove it clearly.

5. The objections here made to the report of the commissioner for the first time ought not to be heard. They should have been made in the court below. No such exception was there made; if it had been, its truth could have been there tested.

6. As to the question of costs, we do not perceive that the Revised Statutes change the rule upon the subject of costs. The appellees were always willing to pay the debt—deducting the usury, the appellant refused, but insisted on "the bond." The appellees succeeded to the extent of the defense made, and

VOL. XV—30

SMITH
*vs.*
BROYLES.

we do not understand the late statute to take from the chancellor his power upon the question of costs. We submit to the court whether the defense did not succeed to the extent made, and whether plaintiff ought to have costs.

Upon the whole case we think the decree of the chancellor correct. The proof shows that Yewell was in the habit of loaning money at usury; his custom is proved by the exhibits. For money lent he took notes for *gold and silver;* for the usury he took plain promissory notes for money; for negro hire he took notes specifying the consideration; all these notes are proved to have been in the hand-writing of Yewell.

We ask an affirmance.

January 12.

Judge SIMPSON delivered the opinion of the Court—

1. If a residuary devisee receive notes of an executor which contain usury, and give them up and take new notes, it is not a waiver of the right of the debtor to purge the usury from the transaction, nor has a residuary devisee any right in such case to go back upon the executor for the amount of the usury.

The appellant did not sustain any injury by the surrender of the notes which were transferred to him by the executor, and the execution of new notes in lieu thereof by the appellees. This arrangement did not create any equity in his favor against the debtors, inasmuch as the loss occasioned by purging out the usury would have devolved upon him, if the notes had remained in the hands of the executor. As the appellant is the residuary devisee, any equity that would be available against the executor is available against him. The executor was not responsible to him in consequence of the assignment made upon the notes, nor has he any claim upon the testator's estate for any loss he may sustain in the transaction. He was not prejudiced, therefore, by the surrender of the old notes with the assignments thereon made by the executor, and the acceptance of the notes sued on in lieu thereof.

The amount of usury in the transaction is correctly ascertained in the judgment of the chancellor. The payment of the *bonus* of fifty dollars on one occasion, is proved positively by one witness, and his

statement is not inconsistent with the other proof on the same subject.

By the Revised Statutes (page 204) it is provided that the party succeeding in any civil suit or action on the merits or otherwise, shall recover costs, unless in the cases specified in that chapter. This is not one of the cases in which, by the provisions of that chapter, a Court of Chancery has a judicial discretion over the subject of costs. The party succeeding was entitled to his costs, although he did not recover the full amount claimed by him. The failure to give him a judgment for his costs was to his preprejudice, and in this respect only is the judment erroneous.

Wherefore, the judgment is reversed, and cause remanded, that a judment may be rendered in favor of the plaintiff for his costs. No judgment will be necessary for the sum due to him from the defendants, inasmuch as the record contains an acknowledgment by him of its payment.

The parties in this court must each pay their own costs.

2. A successful party in any civil suit has a right to recover his costs, unless in the specified cases pointed out by the statute, though he may not recover to the extent of his claim.